Libby *v.* Rosekrans.

peared and claimed his rights, or by some *act* of the justice, manifesting such a determination, I think no case for this extraordinary remedy is made.

Motion denied.

· [NEW YORK SPECIAL TERM, July 6, 1869. *Cardozo,* Justice.]

———————•—•—•———————

LIBBY *vs.* ROSEKRANS, CHENEY and others.

The law provides but two modes of correcting errors in legal proceedings; one by *motion,* where the error is one of form, arising out of a failure to conform to the settled rules of practice of the court; the other by *appeal,* where the errors consist in the omission of the court itself to properly observe and apply the law affecting the rights involved in controversy, in making its adjudication upon them. *Per* DANIELS, J.

Where, in actions upon contracts for the sale and purchase of land, the judgments ascertained the amounts prospectively to become due to the plaintiffs, respectively, for principal and interest, at the several times when the same were agreed to be paid by the defendants, and then directed that in case the same should, at those periods, remain unpaid, then the plaintiffs should have judgments for their recovery, and executions for their collection; *Held* that there was not only nothing improper in this disposition of the cases, but that on the contrary the correct practice relating to them was pursued.

*Held, also,* that even if the directions contained in such judgments were unwarranted by the law applicable to such cases, the error could not be corrected by means of an independent action against the plaintiffs in such judgments, brought by a stockholder in the corporation which was the defendant therein.

· When a receiver of the property and effects of a corporation is appointed, and qualifies, he becomes, by the express terms of the statute, a trustee not only for the creditor upon whose application he was appointed, but for all the other creditors of the corporation.

And where, upon the application of such receiver, directions are given, by the court, as to the manner of making a sale of the property of the corporation in his hands, such directions cannot be assailed, in a collateral action, on the ground that they were in effect procured by a judgment creditor of the corporation who then was, and still is, a justice of this court.

It does not follow, from that circumstance, that the creditor was not authorized to apply for the order; or that he could not draw the petition on which it was made, and the order itself, either before or after it was directed to be entered.

Libby *v.* Rosekrans.

Being a judgment creditor of the corporation when the receiver was appointed, and the receiver becoming a trustee for all the creditors, such creditor is interested in the subject matter upon which the receiver is to be directed, and on which he is to be required to proceed.

Although, as a general rule, a justice of this court is prohibited from practice in it as an attorney or counselor, yet that prohibition does not extend to, or include, such a proceeding as the above, where a justice is interested in the subject matter of it. In such a case he is, by the express language of the statute, at liberty to act.

It is no ground for setting aside a sale of the property of a corporation, made by a receiver, that the creditor upon whose application the order of sale was obtained, being a justice of this court, was, by means of his official position, able to exercise an improper influence in the proceedings, over the court; where it is not shown that his official position resulted in producing any different order or directions than the settled practice authorized the court to give, or than would have been given where any other person was interested in the proceedings to be taken.

An order, giving directions to the receiver as to the mode of conducting the sale, in such a case, is not objectionable because it allows the sale to be made upon fourteen days' notice posted in two public places and published two weeks in a newspaper printed in the city of New York.

If an order directing the receiver as to the manner in which he shall proceed in giving notice of, and making, the sale, in such a case, is irregular or improvident, its correction should be sought by a motion before the court that made it. An independent action will not lie, for that purpose, even though the plaintiff was not a party to the proceeding in which the order was made. Such an order cannot be questioned in a collateral action brought by a stockholder of the corporation whose property is sold.

There is nothing to prevent such stockholder from applying to the court before which the proceedings were had, by motion, to set them aside, if irregular. He is, by the express terms of the statute, a party to the proceedings, the receiver being a trustee for the stockholders as well as the creditors, and equally bound to guard their interests as he is those of the creditors.

And if the receiver fails in his duty in that respect, or lends himself to the creditors, to the unnecessary prejudice of the stockholders, the court before which the proceedings are taken, upon that being established, would intervene, on his application and set them aside.

The primary object of a sale of the property of a corporation, by a receiver, being to satisfy judgments against it, the judgment creditors are at liberty to bid upon and buy it; and that can be done by all together, or by one, for the benefit of all. Hence, an allegation, in a complaint, that prior to such a sale, two of the defendants who were creditors, entered into some arrangement by which they were to jointly participate in the property which one of them should buy at the sale, falls entirely short of supporting the charge of fraud in the procurement of the order of sale and the order confirming

the receiver's report of sale. And such allegation is not strengthened by the averment that this arrangement was observed by a division of the property between the creditors.

Nor will the charge of fraud be supported by an allegation in the complaint that the defendants, combining together, and for the purpose of securing to themselves the property of the corporation by virtue of their judgments, induced the receiver to apply to the court, by petition, for instructions as to the sale of such property; that the receiver was acting in their interest, and was under their control and direction; and that the petition, and the order made upon it, were prepared by one of the defendants; where there is no averment that they induced the receiver to apply for such directions; or that he did so apply, in order to carry such conspiracy into effect; or that the application or order had anything to do with the execution of such a purpose.

So, as to an allegation that one of the defendants, acting for himself and a co-defendant, entered into a corrupt and collusive agreement with certain persons specified, *claiming* to act as agents, or otherwise, for the corporation, by which such defendant was permitted to obtain the order of the court directing the manner and mode of sale of the property and interests of the corporation; and that by and through the same corrupt and collusive agreement, the sale was managed and conducted by the receiver under the advice and counsel of the defendants; where it is not averred that the persons with whom the collusive and corrupt agreement is alleged to have been made were authorized to act on the part of the corporation, or to compromise it by giving any consent or agreement.

Such an allegation is also defective in not setting forth the substance of the agreement claimed to have been made. Where an agreement is alleged to be collusive, the specific manner in which the fraud was perpetrated, or agreed to be perpetrated, should be set forth.

APPEAL by the plaintiff from an order made at a special term, sustaining demurrers to the complaint, interposed by the defendants E. H. Rosekrans, and John H. White, receiver of the Adirondack Company.

The action was brought by the plaintiff in his own behalf, and in behalf of all others, stockholders or creditors of the defendant, the Adirondack Estate and Railroad Company, who might choose to come into court and contribute to the costs and expenses of this action.

The complaint shows that prior to the year 1860 a corporation was in existence known as the "Lake Ontario and Hudson River Railroad Company." That this com-

pany had acquired the title to five hundred thousand acres of land in northern New York, upon the line of a projected railroad from Saratoga Springs to Sackett's Harbor, and which land had by the action of the legislature of the State of New York been exempted from taxation, and that in acquiring such land, and in constructing a road-bed upon such projected route, such company had expended $2,000,000, or thereabouts. That subsequently another corporate company was organized, known as the "Adirondack Estate and Railroad Company," which succeeded to all of the rights and property of the "Lake Ontario and Hudson River Railroad Company." That on the 8th day of October, 1860, the defendants Albert N. Cheney and Enoch H. Rosekrans made two several contracts with the "Adirondack Estate and Railroad Company," by which the said Cheney agreed to sell to said company fifty-four thousand one hundred and forty-five acres of land, situate in the wilderness of northern New York, at the sum of $162,435. Upon which contract Cheney received, at the date of the execution of the same, the sum of $500. The contract also provided that the company should pay the balance as follows : $1000 January 1, 1861; one quarter of the balance April 1, 1861; another quarter, with interest, January 1, 1862; another quarter payment, with interest, on the 1st day of January, 1863, and the residue January 1, 1864. The agreement further provided that if the company failed to perform its agreement as to payments, then the agreement might be declared void at the election of Cheney, and all prior payments to be forfeited, but if the agreement was performed, said Cheney was to make a conveyance to the company. That Enoch H. Rosekrans made also his agreement of sale as before stated, the substance of which was that he agreed to sell and convey to such company fifty-six thousand acres, or thereabouts, of wild land, supposed to be upon the line of the road-bed and route belonging to the com-

pany, at the aggregate sum of $168,297, upon which the sum of $500 was paid Rosekrans upon the execution of the contract, and as to the balance, that was to be paid in manner and time as fixed by the contract with Cheney. That instead of treating the payments made at the inception of the contracts as a mere forfeiture by the company, Cheney and Rosekrans brought their several actions in this court for a specific performance of the same, and on the 19th day of February, 1862, each of said defendants recovered a judgment against the company, which were entered in the office of the clerk of this court in the county of Warren. That an execution upon the judgment in favor of Cheney was issued and returned *nulla bona*, and N. Edson Sheldon was appointed receiver upon the sequestration of the property of the judgment debtor, by the order of this court made at a special term held at Plattsburgh in the month of June, 1862. That in the month of July, 1862, upon the application of one George W. Chadwick, a judgment creditor, another receiver, Alexander Seward, was appointed by the order of this court, at a special term held in the county of Oneida, but who was subsequently succeeded by the appointment of Andrew Dexter, by the order of the same court, on the 6th day of December of the same year. That by an arrangement between Rosekrans, Cheney and Chadwick, both of said receivers acted in concert in making sale of all of the property of the Adirondack Estate and Railroad Company. And preparatory thereto Rosekrans and Cheney conspired together to secure to themselves the large property of the company, and having the complete control of Sheldon, one of the receivers, who acted throughout in the interest of Rosekrans and Cheney, induced Sheldon to apply to this court in the 4th judicial district for instructions as to the terms and mode of sale of the property of the judgment debtor. Such application, however, was made in the action in which Cheney was the plaintiff, but the petition and order

were prepared and drafted by Rosekrans, who in that regard acted as counsel for Cheney. That order was as follows:

"On reading and filing the petition of N. Edson Sheldon, receiver of the property &c. of the Adirondack Estate and Railroad Company, dated the twenty-second day of November, 1862, and praying the advice, direction and instructions of the court in reference to the matter set forth in the said petition; and after hearing Mr. Brown, of counsel for said petitioner, it is ordered that the said N. Edson Sheldon, receiver, &c., be authorized, directed, advised and instructed, as follows, viz: The said receiver may, in his discretion, advertise for sale at public auction, to the highest bidder, for cash, the real property of which the said company was seized in fee at the time of his appointment, and also its interest in the lands contracted to be sold to said company, by E. H. Rosekrans and A. N. Cheney, respectively, and its other interest in lands, as mentioned in the said petition, by some brief and general description, without distinguishing or describing the lands separately. Said notice shall be given at least fourteen days before the day of sale, by posting the same in at least three public places in the city and county of New York, and by publishing the same at least two weeks in a newspaper printed in said city; and the sale shall take place at the city of New York. Said sale may be adjourned from time to time at the discretion of the said receiver, and if any adjournment shall be made for more than five days, the same notice thereof shall be given as is above required for the notice of the sale, except as to time, which shall be sufficient if the notice is published and posted the day after the adjournment is made.

It is hereby declared that the judgment in favor of Enoch H. Rosekrans and Albert N. Cheney, referred to in the said petition, are the first liens upon the lands so to be sold, and are such liens to the full amount thereof, presently due and hereafter to grow due and payable, to wit,

the sum of three hundred and sixty-eight thousand three hundred and forty-nine dollars and thirty-six cents, on the twenty-second day of November, 1862.

The said receiver is hereby directed, when he shall open the said sale, to ascertain whether in his judgment there are persons present who, in case the property is offered in separate parcels, bid in good faith, and pay in the aggregate for the several parcels, as much as or more than the sum aforesaid amounts to, and in case there are any such persons, then he shall offer the same for sale in parcels in such manner as may produce the highest price. But in case he shall be satisfied that the property will not in the whole fetch as much upon said sale as the amount above stated, and in case the said Cheney shall attend said sale in person, or by agent, and be ready and willing to bid thereat in one bid for the whole property the sum aforesaid, distinguishing for what particular portions of the property specified amounts are offered, with reference to its consisting of real estate or interest in land contracts, or in lands, the said receiver shall offer the said property for sale as an entirety, and shall sell the same as an entirety to the highest bidder, but not for less than the sum aforesaid ; and in case such purchaser shall be the said Cheney, then the said receiver shall apply so much of his bid as was for the real estate upon the two judgments hereinbefore referred to, without requiring him actually to pay over the money, provided the proper receipts and satisfaction pieces are given by the said Cheney and Rosekrans, to take effect when the deed is delivered and sale confirmed.

The said receiver may use his own discretion as to joining in the sale with Alexander Seward, also claiming to be receiver &c. of said company ; but he is directed to do nothing which he shall be advised, by his counsel, shall in any manner injuriously affect his claim to priority or any of the interests represented by him."

That the receiver, N. Edson Sheldon, in virtue of this order and the directions given him by Rosekrans and Cheney, did on the sixteenth day of December, 1862, sell at public sale, at the Merchants' Exchange sales rooms, No. 111 Broadway, in the city of New York, the vast property of the Adirondack Estate and Railroad Company, the same being struck down to Cheney in the presence of Rosekrans, as follows: The interest of the company in the Cheney and Rosekrans land contracts, for the sum of $100, and the road-bed and all other lands held in fee by the company, for the sum of $370,068.32, which bid was taken by the receiver to apply upon what was then due and to grow due under the judgments in favor of Rosekrans and Cheney respectively.

As matter of fact, the complaint alleges that Rosekrans and Cheney were jointly interested in the bid made by Cheney at such sale, and that upon a previous arrangement it was understood between those parties that the property acquired upon such sale should enure to their joint benefit, which agreement was thereafter carried out between them by conveyance from Cheney to Rosekrans, vesting in him his appropriate share. That after Rosekrans and Cheney had thus obtained the property of the Adirondack Estate and Railroad Company, they sold the same to another company known as the Adirondack Company, the present owner of the property, and in making such sale Rosekrans and Cheney received $400,000 for the lands originally sold by them, and which were bid off at the receiver's sale for the sum of $100, and for which the Adirondack Company paid in cash $100,000, securing the residue by two mortgages covering the same lands; and as to the residue of the property formerly owned by the Adirondack Estate and Railroad Company, Rosekrans and Cheney received of the capital stock of the Adirondack Company $1,000,000, and its bonds in the sum of $400,000.

The complaint further discloses as matter of fact, that at

the time that these transactions occurred, Enoch H. Rose-krans was one of the justices of the Supreme Court, and as such had, and exerted, an undue influence over the court in his district, and also that in his own behalf and as counsel for Cheney he entered into a corrupt and collusive agreement with Hezron A. Johnson and others acting ostensibly in behalf of the Adirondack Estate and Railroad Company, by which Rosekrans and Cheney were enabled to carry out their plans through the forms of law for the acquisition of the large and valuable property of the Adirondack Estate and Railroad Company. That certain actions have been commenced in this court against the said Adirondack Company, in which such proceedings have been had that the defendants John A. Dix and John H. White have been severally appointed receivers of the assets and property of the said Adirondack Company. And that said receivers last named, acting in hostility to each other, are assuming some control and management of said railroad, and the interests, rights and property of said Adirondack Company. And the said plaintiff further alleges, upon information and belief, that the lands so contracted to be sold by the said Rosekrans and Cheney to the Adirondack Estate and Railroad Company, and bid off by said Cheney at the sum of $100, were, in point of fact, worth the sum at which said lands were sold to said company by the contract aforesaid, and for which said Rosekrans and Cheney recovered their judgments respectively, as hereinbefore set forth. And that the other property so sold at such receiver's sale to said Cheney, as hereinbefore stated, being the road-bed, lands and other interests of the Adirondack Estate and Railroad Company, was at the time of such sale, to the knowledge of said Rosekrans and Cheney, and of said receiver, who conducted said sale, worth the sum of $2,000,000, or thereabouts.

And the plaintiff alleges and avers, that the order hereinbefore recited, directing the mode and manner of such

sale, was void, and in violation of the statute in such cases made; and also that such sale, as conducted, was in violation of the rights of said Adirondack Estate and Railroad Company, and the plaintiff, as also of the stockholders of the company lastly above named. That said Rosekrans and Cheney have, by the scheme and collusion before charged, obtained an unfair and unconscionable advantage against said Adirondack Estate and Railroad Company, its stockholders and this plaintiff, and others. That the notice of sale, as published by such receivers under the judgments obtained by said Rosekrans and Cheney, did not contain a full or accurate description of the lands hereinbefore described, by metes and bounds, or otherwise, so as to properly inform the public of such sale. That said Rosekrans and Cheney are now profiting by the undue advantage so gained as aforesaid, and have sought, and are now seeking out of such surreptitious and collusive transactions, to gain a much greater amount of money for their lands than was contemplated, or than they should have, at the expense and detriment of the plaintiff and others, stockholders of the Adirondack Estate and Railroad Company. And the plaintiff further alleges, that he did not know until the month of November, 1866, that such fraud and collusion had been practised as hereinbefore set forth, nor that such sale had been as aforesaid conducted. That to allow such receiver's sale to stand, will work great wrong and injury to the plaintiff and others, the stockholders and others interested, of the Adirondack Estate and Railroad Company. That the said Rosekrans and Cheney are now seeking through the forms of law to sequestrate the property of the Adirondack Company, and to secure the payment of the said sum of $300,000 out of the property and assets of said company, instead of resorting to the foreclosure of the mortgages aforesaid, thus impairing the value of the stock of said company, which stock, but for the action and doings of the said Rosekrans and Cheney

as above stated, would have value in the market as well as for permanent investment. That the most, if not all, of said stock which is set apart as an issue to said Rosekrans and Cheney, is now retained by said Adirondack Company.

The plaintiff demanded judgment, and for relief, as follows :

*First.* That the sale of the property, road-bed, lands, and interest in the lands of said Adirondack Estate and Railroad Company, made jointly by the receiver, firstly hereinbefore mentioned, to said Cheney, be set aside as having been and being unjust, oppressive, fraudulent and illegal. Or,

*Second.* That said plaintiff, and others interested with him, who may unite with him in this action, be subrogated to all of the rights, benefits, and pecuniary advantages which the said Rosekrans and Cheney, or either of them, now have, or may have acquired, under and by virtue of the contract and sale of said property hereinbefore set forth, to the Adirondack Company, save and excepting the two mortgages of $150,000 each, to said Rosekrans and Cheney, respectively, and that said Adirondack Company be compelled to cancel such stock, scrip or bonds, standing in the name of said Rosekrans and Cheney upon the books of said company, and to issue a like amount of stock and bonds to such receiver as may be appointed by this court, for the benefit of the parties plaintiff herein concerned. And that said Adirondack Company be restrained, by the order of this court, from issuing any stock or bonds of said company to said Rosekrans and Cheney; and that as to such bonds or stock as may, under such contract and sale, have been issued to said Rosekrans and Cheney, or either of them, and which may have been sold or hypothecated by them, or either of them, said Rosekrans and Cheney account and pay over to such receiver the proceeds of the same; and that as to such stock or

bonds still in their hands and not disposed of, they and each of them be restrained by like order from disposing of the same, and that they be required to transfer the same to said receiver, for the benefit of said plaintiff, and such other persons who may unite with him in this action.

*Third.* That the said Rosekrans and Cheney be perpetually enjoined from taking any further action, by action at law or otherwise, against said receivers, John H. White and John A. Dix, or against said Adirondack Company, for the collection of the said sum of $300,000, excepting only by the foreclosure of said mortgages upon the lands embraced within the same by description.

*Fourth.* That said receiver last named be perpetually enjoined from paying to either said Rosekrans or Cheney, their attorneys, heirs or assigns, any portion of the said sum of $300,000 out of any funds, property or assets of said Company, excepting the property and lands embraced in mortgages aforesaid.

*Fifth.* That a referee be appointed by this court to take proof of the matters of this complaint in equity, under such directions as may seem proper, with the view of adjusting the equities of the various parties concerned prior to a preliminary order for the appointment of a temporary receiver; and that such receiver be also appointed by this court, according to the rules and practice of this court in such cases.

*Sixth.* That this court grant a temporary injunction order restraining said defendants from doing any of the acts now apprehended hereinbefore set forth, and of the nature and effect hereinbefore prayed for

*Seventh.* For general relief.

The defendant John H. White, receiver, &c., demurred to the complaint, on the ground that it appears on the face thereof that the complaint does not state facts sufficient to constitute a cause of action.

The defendant Enoch H. Rosekrans demurred to the complaint, on the following grounds:

1st. The court has no jurisdiction of the subject of the action.

2d. The plaintiff has not legal capacity to sue.

3d. There is a defect of parties plaintiff.

4th. There is a defect of parties defendant.

5th. Several causes of action have been improperly united.

6th. The complaint does not state facts sufficient to constitute a cause of action.

The court, at special term, sustained the demurrers, and ordered judgment for the defendants thereon, with leave to the plaintiff to amend on payment of costs.

The following opinion was delivered, at the special term, by the justice holding the same:

DANIELS, J. The defendants Enoch H. Rosekrans and John H. White have demurred to the complaint in this action, the latter upon the ground that it fails to state facts sufficient to constitute a cause of action, and the former on that, as well as other grounds of demurrer. As the objection that the complaint states no cause of action, is the only one which it is deemed necessary to notice in disposing of the case, the others may as well be laid entirely out of view.

It appears by the complaint that the defendants Enoch H. Rosekrans and Albert N. Cheney, on the 8th day of October, 1860, entered into agreements with a corporation, formed under the laws of this State, to construct and operate a railroad from Saratoga to Lake Ontario, called the Adirondack Estate and Railroad Company, by which they severally agreed to sell and convey certain lands situated near to or upon the line of such railroad, and owned by them respectively, to that company. The land which such defendants agreed to sell and convey amounted, in the

aggregate, to upwards of one hundred thousand acres. When the purchase price was fully paid, which by the terms of the contracts the company agreed to pay in certain stipulated installments, the vendors agreed to convey the title to it, subject to taxes imposed after the execution and delivery of the contracts.

The company made default in the payment of the purchase price of the lands agreed to be sold and conveyed to it, and the vendors respectively commenced actions in this court for the purpose of securing the specific performance of the contracts by the company. The company answered the complaints in those actions, but its answers, on notice, and after a hearing before one of the justices of this court under section 247 of the Code, were stricken out, and judgments were directed for the plaintiffs in those actions. By these judgments the plaintiffs were respectively allowed to recover the amounts to accrue prospectively upon their contracts, as such amounts were mentioned and agreed to be paid in and by the terms of such contracts. This was objected to upon the argument of the demurrers as being entirely unwarranted by the law applicable to such cases. But even if that were legally true, it is not perceived how the error could be corrected in the present action. The law provides but two modes of correcting errors in legal proceedings. One by motion, where the error is one of form arising out of a failure to conform to the settled rules of practice of the court; the other by appeal, where the errors consist in the omission of the court itself to properly observe and apply the law affecting the rights involved in controversy, in making its adjudication upon them. But in this case, as the judgments, or the orders directing them, are set forth in full in the complaint, they do not exhibit any legal errors in the respect in which they are made the subjects of objection. For they do not direct a recovery of the amounts to become due upon the contracts, absolutely, at the time of their ren-

dition.   But they ascertain the amounts prospectively to
become due for principal and interest at the several times
when the same were agreed to be paid by the company,
and then direct that in case the same shall at those peri-
ods remain unpaid, then the plaintiffs in the actions shall
have judgments for their recovery, and executions for their
collection.   There was not only nothing improper in this
disposition of the cases, but on the other hand the correct
practice relating to them was pursued.   It was the mani-
fest duty of the court sitting in equity to make a complete
disposition of the cases in the judgments directed to be
entered, and that could not be successfully accomplished
in any other way.   As no execution was to be issued for
the collection of the installments subsequently accruing,
under the terms of the contracts, until they had respect-
ively matured, there is no way in which injustice could be
done to the company by means of the directions for their
recovery in case of their nonpayment, and no apprehen-
sion of either injustice or inconvenience appears at any
time to have been entertained by the defendant in those
actions on account of these directions.   And while that
continued to be the case, it is difficult to discover any au-
thority that will permit the plaintiff, as a stockholder in
the company, to take and maintain any proceeding what-
ever for the purpose of securing a change in any re-
spect in such directions.   Certainly no such proceeding can
be successfully maintained by an independent action on
his part.

  The complaint alleges, that an execution was issued
upon the judgment recovered by the defendant Albert N.
Cheney against the property of the corporation, which was
returned unsatisfied, and that an application was made by
him thereupon for a sequestration of the property of the
corporation, and the appointment of a receiver of it, and
that such application was successful, and resulted in the
appointment of N. Edson Sheldon as receiver, who ac-

cepted the appointment, and entered upon the discharge of his duties as receiver of the property of the corporation. Another receiver was afterwards appointed, upon the application of another judgment creditor whose execution had been returned unsatisfied. But as there could obviously be nothing for him to take as receiver while Sheldon continued to act under his appointment, it will be unnecessary to devote any attention to him in disposing of the objections presented by the demurrers. When Sheldon was appointed and qualified himself as such, and entered upon and continued in the discharge of his duties, by the express terms of the statute, he became a trustee not only for the creditor under whose application he was appointed, but for all the other creditors of the corporation whose property and effects he took. (3 *R. S. p.* 763, § 44; *p.* 770, § 78, *5th ed.*)

The receiver appointed under the application of Albert N. Cheney, applied to this court for directions to be given him in making sale of the property of the corporation which he had received, and become invested with as such, and an order was made giving him the directions applied for. These directions are assailed by the complaint on various grounds as unwarranted and unauthorized. One of these grounds is, that they were in effect procured by the defendant, Enoch H. Rosekrans, who then was, and still is a justice of this court. But it does not follow from that circumstance that he was not authorized to apply for the order, or that he could not draw the petition on which it was made, and the order itself, either before or after it was directed to be entered. For the receiver, whose conduct was to be directed, was just as much a trustee for him as he was for Cheney, under whose application he was appointed. He was a judgment creditor of the corporation when the receiver was appointed, and the receiver then became a trustee for all the creditors. The defendant Rosekrans was therefore interested in the subject matter

upon which the receiver was to be directed, and on which he was to be required to proceed.   And although as a justice of this court he was generally prohibited from practice in it as an attorney or counselor, (3 *R. S.* 466, § 9, *5th ed.*,) yet that prohibition did not extend to or include the proceeding in question, because he was interested in the subject matter of it.   And for that reason, by the express language of the statute, he was at liberty to act as it is alleged he did.   (3 *R. S.* 465, § 4, *5th ed.*)

It is also alleged in the complaint that the defendant Rosekrans, by means of his official position, was able to exercise an improper influence in the proceedings, over the court in which they were taken.   But it is not shown by any statement contained in the complaint, that his official position resulted in producing any different order or directions than the settled practice authorized the court to give, or than would have been given where any other person was interested in the proceedings to be taken. The order containing the receiver's directions recites that it was made upon the motion of Mr. Brown, as counsel for the applicant, who was the receiver, and it nowhere appears, from anything contained in it, as it is set out in the complaint, that the defendant Rosekrans had anything whatever to do with it.   But even if he had all that the complaint charges to do with it, that would constitute no sufficient ground for setting it aside, because the statute allows so much to be done by a justice of this court in an action in which he may be a party, or in the subject matter of which he may be interested.

This order directing the conduct of the receiver concerning the sale to be made, of property of the corporation, is objected to as unauthorized, because it allowed the sale to be made upon fourteen days' notice posted in three public places, and published two weeks in one newspaper printed in the city of New York.   But if faulty and objectionable in these respects, it was not owing to the

Libby *v.* Rosekrans.

misconduct either of the defendant Enoch H. Rosekrans, or of Albert N. Cheney, or of the receiver, or the court itself that made the order. On the contrary, it was the fault of the law, for that provides that the receiver should have the power and authority, and be subject to the same obligations and duties, as receivers appointed upon the dissolution of a corporation, who have all the power and authority conferred by law upon trustees of an insolvent debtor, pursuant to the provisions of the fifth chapter of the second part of the Revised Statutes. And these trustees are required to sell at public auction, all the estate, real and personal, vested in them which shall come to their hands, after giving fourteen days' notice of the time and place of sale, and publishing the same for two weeks in a newspaper printed in the county where the sale shall be made, (3 *R. S. p.* 763, § 44; *p.* 770, § 79 ; *p.* 115, § 9, *sub.* 4, 5th *ed.,*) which the order directed the receiver to observe in selling the property of the corporation, and which his report, set out in the complaint and referred to for the purpose of showing the manner of and proceedings had at the sale, shows were fully complied with by him. It is alleged in the complaint that the defendant Rosekrans attended and advised with the receiver, as his counsel, at the time of and during the progress of the sale. But even if he did, that would form no reason for setting it aside, in the absence of any specific act of misconduct on his part, for he had a right to attend and advise the receiver, on account of the interest he had in the proceeding the latter was taking. To deny him that right might very seriously have prejudiced the interest he had in the collection of his debt, for which those proceedings were directed to be taken.

But even if the order directing the receiver as to the manner in which he should proceed in giving notice of and making the sale, were irregular or improvident, its correction should be sought by a motion before the court that made it. There is no authority that will sustain an

independent action for that purpose, even though the plaintiff was not a party to the proceeding in which the order was made. But the authority, so far as it goes, is most decidedly opposed to the maintenance of such an action. (*Brown* v. *Frost*, 10 *Paige*, 243. *Am. Ins. Co.* v. *Oakley*, 9 *id.* 259. *McCotter* v. *Jay*, 30 *N.Y. Rep.* 80. *Gould* v. *Mortimer*, 26 *How. Pr.* 167.)

The court that made the order had jurisdiction over the parties and the subject matter, by means of the proceedings already taken before it, and even though its order then made should prove to be irregular or improvident, it could not for those reasons be questioned or assailed in a collateral proceeding like the present action. (*People* v. *Sturtevant*, 5 *Seld.* 265, 266, 267.)

No difficulty stood in the way of the plaintiff, as a stockholder in the corporation, which would prevent him from applying to the court before which the proceedings were had, by motion to set them aside, if for any reason the propriety of such interference with them could be sustained. He was, by the express terms of the statute, a party to these proceedings, for the receiver was a trustee for the stockholders as well as the creditor, and equally bound to guard and subserve their interests as he was those of the creditors. And if he failed in his duties in that respect, or lent himself to the creditors to the unnecessary prejudice of the stockholders, there can be no room for doubt but the court before which the proceedings were taken, upon that being established, would have intervened on his application, or that of any other stockholder, and set them aside. It is just however, to add, in this connection, that the report of the receiver, which is incorporated into the complaint, and referred to as a reliable statement of his proceedings under the order, contains nothing tending to impeach either his fidelity or capacity in the discharge of the duties entrusted him. On the other hand, it shows a substantial, if not a literal com-

pliance with the directions given to him by the order. The fact that the property was sold for much less than it was worth, may prove to be unfortunate to the plaintiff and the other owners of the stock of the corporation, but it is one of those misfortunes which often attend the sale of an insolvent debtor's property when it is made under legal process for the payment of debts. That alone furnishes no ground for impeaching or setting aside the sale. If it did, sales of property under legal process and proceedings would soon become of so uncertain a character, as to be altogether unreliable for purchasers, and the result would be that the difference between the value and the price brought would be still further increased.

But the plaintiff claimed, upon the argument of the demurrer, that the allegations contained in the complaint showed that the order directing the receiver in his proceedings for the sale of the property was procured by fraud, and that such proceedings should be so far set aside as to turn the defendants Albert N. Cheney and Enoch H. Rosekrans into trustees for the benefit of the stockholders of the corporation, as to the excess payable to them on the sale of the property which they acquired through the receiver's sale, after the payment of the amounts due upon their judgments. This the plaintiff would probably be able to accomplish if the facts alleged in the complaint were sufficient to show that the orders of sale and confirmation were procured by fraud. These orders, as they are set out in the complaint, in view of the statutes affecting them, and under which they were made by the court, do not support the conclusion which the plaintiff endeavors to maintain. For, as before observed, the statutes sanction just such a course of proceeding as was adopted for the receiver, and which he followed in disposing of the property. No inference of fraud can therefore be supported by the proceedings themselves. The question will therefore necessarily arise upon this complaint, whether

the allegations in it present a case of fraud, outside of the papers themselves. If such a case is presented, it is one that may be redressed by action, and could not be in any other manner, since a trust is endeavored to be created in favor of the plaintiff in the moneys or property that may remain in the hands of the defendants Cheney and Rosekrans after the payment of their judgments. And that trust, it is claimed, should be declared on account of what is insisted upon as fraudulent misconduct on their part. Fraud invalidates all transactions, even those of the most solemn nature and character, as judgments and decrees of courts of justice. (*Shedden* v. *Patrick,* 28 *Eng. Law & Eq. Rep.* 56. *Story's Eq. Jur.* § 252. *Dobson* v. *Pearce,* 2 *Kern.* 156.) And it is equally true of proceedings and orders which result in producing direct injuries to the property and interests of others. Whether the plaintiff as a stockholder can maintain such an action as this without showing that the company itself is complicated in the transaction claimed to be fraudulent, and for that reason unwilling to maintain and vindicate his rights as a stockholder, it is not necessary at present to consider; for the facts alleged in the complaint will be found upon examination to be insufficient to support the charge of fraud in the procurement of either of the orders referred to. It is alleged that prior to the sale of the property by the receiver, the defendants Rosekrans and Cheney entered into some arrangement by which they were to jointly participate in the property which Cheney should buy at the sale. But nothing is stated indicating any impropriety in such an arrangement between them. The primary object of the sale was to satisfy their judgments, and either one or both of them were at liberty to bid upon and buy it, and that could be done by both together, or by one for the benefit of both, as they elected and agreed, without violating any legal or even ethical principle whatsoever. This allegation falls entirely short of making any fraudulent

disclosure whatever, and it is not strengthened in any manner by the circumstance afterwards alleged, that this arrangement was observed by a division of the property between them.

In a preceding portion of the complaint, it is alleged that these two defendants, " conspiring together, and for the purpose of securing to themselves the large property of the Adirondack Estate and Railroad Company by virtue of their judgments," induced the receiver " to apply to the Supreme Court by petition, for instructions as to the sale of the property " of the company. That the receiver was acting in their interest, and was under their control and direction, and that the petition and order made upon it was prepared by the defendant Rosekrans. But this does not aver that they induced the receiver to apply for such directions, or that he did so apply, in order to carry such conspiracy into effect, nor that the application or order had anything whatever to do do with the execution of such a purpose. The only act they induced the receiver to do was to apply to the court for instruction as to the sale of the property of the company. And there was clearly nothing fraudulent about that, even though these defendants may have conspired as the complaint alleges they did, as long as they did nothing to execute the conspiracy. No harm was done by it, either to the plaintiff or the corporation in which he was a stockholder. There was nothing unlawful or improper in the receiver applying to the court for directions, or in these defendants inducing him to make that application, as long as it is not alleged that it was done for the purpose of executing the conspiracy it was stated was made.

The complaint contains another allegation relating to the application for the order directing the receiver how to proceed in making the sale. In that it is stated that the defendant Rosekrans, acting for himself and Cheney, entered into a corrupt and collusive agreement with Hezron

A. Johnson and others, who claimed to act as the agents, or otherwise, for the Adirondack Estate and Railroad Company, by which said Rosekrans was permitted to obtain the order of this court, directing the manner and mode of sale of the property and interests of the company. And that by and through the same corrupt and collusive agreement, the sale was managed and conducted by the receiver, under the advice and counsel of Rosekrans, Cheney, Johnson and others. A radidal defect in this statement consists in the omission to show that the persons with whom the collusive and corrupt agreement is alleged to have been made, were authorized or empowered to act on the part of the company, or in any manner to compromise it, by anything they might consent these defendants should do. It is stated that they claimed to act as agents, or otherwise, for the company, not that they were agents, or in any manner in fact authorized to act for it, and the allegation might very well be true of any persons whatsoever having no semblance of connection with it. And all that it alleges they did was, that they permitted the defendants to obtain the orders that the court made, not that the agreement claimed to have been made, either secured, or contributed to, the making or procuring of the orders. In fact, their permission is not shown to have entered into the making of the orders, or to have had anything whatever to do with them. The allegation made concerning this agreement is materially defective in another respect, besides the failure to show that these persons had any connection with the company, and that is in not setting forth the substance of the agreement claimed to have been made. It would not be sufficient to procure the rescinding of an agreement, to allege, generally, that it was fraudulently made or procured. The specific manner in which the fraud was perpetrated, or agreed to be perpetrated, where the agreement is collusive, should be set forth. The practice governing pleadings in courts of justice requires

Libby *v.* Rosekrans.

this to be done, to enable the party whose conduct is affected by it to take a proper issue upon it, and to know what proof he must be prepared to meet upon the trial of such issue, and also to enable the court to determine what the legal rights of the parties may be, growing out of the transaction in dispute. A complaint alleging generally that a collusive or corrupt agreement was made, injuriously affecting the plaintiff's rights or interests, would be clearly insufficient; so much so, that without amendment it would be dismissed as showing no cause of action, and that is the only allegation made in this case, charging actual fraud upon the defendants. Neither of the allegations in the complaint show that the defendants either accomplished anything unlawful by the use of lawful means, or made use of unlawful means to secure lawful results. It is not alleged in the allegations last considered, nor in any of those which precede it, that either of these orders were procured for any improper or unlawful purpose, nor that either of them was used for such a purpose. The order directing the receiver how to advertise and sell the property, and his proceedings under it, are relied upon as showing that such must have been the character of these orders. But as that order contains no provision or direction of an unlawful or improper nature, but conformed to the provisions of the statutes relating to and governing the proceedings, it can sustain no such conclusion as that which the plaintiff's counsel insists should be drawn from it.

Under no view that can be taken of these allegations, whether considered separately or combined together—for they are no more effectual when combined, than they are separately, having no necessary connection with each other—do they support the conclusion that either the order instructing the receiver, or that confirming his proceedings, was collusive or fraudulent, in the equitable sense of that term. The defendants must therefore have

judgment upon the demurrers, with leave to the plaintiff to amend in twenty days, on payment of costs.

From the order entered upon this decision, the plaintiff appealed to the general term.

*E. W. Dodge,* for the appellant. I. The theory of this action is that an act of gross injustice and wrong has been practised upon the plaintiff and other stockholders of the Adirondack Estate and Railroad Company. The proposition that the plaintiff cannot have redress as to matters of which he complains, by an original action in equity, is untenable.

And the authorities cited in the opinion of the learned justice at special term, to the effect that an irregular or improvident order made in an action can only be inquired into by motion in such action, are not applicable here, for it will be found that those cases were of such nature and in such condition that the court could intervene upon motion without prejudice to any acquired rights of innocent parties. The case now presented is not of that class. It is not pretended that the judgments in favor of Rosekrans and Cheney against the Adirondack Estate and Railroad Company, or any orders thereon predicated, if set aside by motion or otherwise, will be of any advantage to the plaintiff, because the receiver appointed in the case of Cheney, long before this action was commenced, had completed his labors and had been discharged by the court that appointed him, and an innocent and bona fide purchaser, to wit, the Adirondack Company, had acquired an absolute and vested right to the lands and road-bed formerly owned by the Adirondack Estate and Railroad Company, by conveyance from Rosekrans and Cheney, which title thus acquired could not be disturbed by any proceeding by motion in either of the actions brought by Rosekrans and Cheney upon the judgments under which such property was sold; and it will be seen that by the

Libby *v.* Rosekrans.

complaint in this action, it is conceded that the Adirondack Company possesses a valid title which cannot be set aside. (*Willard's Eq. Jur.* 356. *Dobson* v. *Pearce,* 2 *Kern.* 165.)

II. The gravamen of this action is that Enoch H. Rosekrans and Albert N. Cheney, by trick, artifice and fraud, under the cover of judicial proceedings, obtained possession of all the property of the Adirondack Estate and Railroad Company, to the prejudice of the stockholders of such company, the plaintiff being one of them, and owning a large interest as such. If the case, as presented by the complaint, satisfies the court that a party in interest, and prejudiced by the legal proceedings taken by Rosekrans and Cheney, might have applied to the court in the actions brought by them to be protected against the wrong and injustice alleged by the complaint to have been done them, it is submitted that under the circumstances, while the relief cannot be granted in that form, nevertheless the right to redress is not lost, but Rosekrans and Cheney should be compelled to disgorge all that they have received in excess of whatever just claims they may have had against the company.

It will not be forgotten that from the beginning to the end of the litigation carried on by Rosekrans and Cheney against the Adirondack Estate and Railroad Company, Enoch H. Rosekrans was one of the justices of the Supreme Court of the 4th judicial district, and as such exerted an influence in his own court, which turns out to have operated with great oppression and injustice upon all adverse parties. Instead of an action at law to recover money due upon the two contracts, two actions in equity are brought for a specific performance, where a complete remedy at law existed. It will thus be seen that at the very incipient stage of the litigation a plain rule of law was thrust aside and ignored altogether, because in no other manner could Rosekrans and Cheney accomplish

their ulterior purpose; and furthermore, it was desirous that a trial by jury should be avoided, which was thus prevented, as also any trial in form, as anticipated, through the subsequent order of an associate justice of this court in that district, who ordered judgments, because, as alleged, the answers were sham, and as will be seen, judgments in both the Rosekrans and Cheney actions were ordered on the 19th day of February, 1862, directing executions to issue as the installments of money under the contracts became due, the last of which was the first day of January, 1864.

One singular feature in the history of this litigation against the railroad company is the fact that the plaintiffs therein did not, upon execution, sell any portion of the real estate of the company; the reason for this is apparent; in that event the company, under the statute, would have the right of redemption, to avoid which a resort was had to a receiver. It is admitted by the demurrers that Rosekrans acted as counsel in behalf of Cheney in procuring the order instructing the receiver as to the mode and terms of sale.

The order which "authorized, directed, advised and instructed" N. Edson Sheldon, the receiver, as to the mode and manner of sale of the real property of the Adirondack Estate and Railroad Company was made on the 28th day of November, 1862. And, as will be seen, the order declares the sum of $368,349.36 to be due upon the Rosekrans and Cheney judgments on the 22d day of November, 1862, whereas in point of fact by the terms of those judgments there had become due to Cheney $90,554.94, and to Rosekrans the sum of $94,082.03, being in the aggregate $184,636.97, while the balance of the claims in those actions was not to accrue by the terms of the decree, nor to be enforced before January 1, 1863, and January 1, 1864. It is needless to inquire whence the court derived the authority to direct the sale of the property of a judg-

ment debtor to satisfy a debt not due, by the terms of the decree, until two years afterwards. But it is proper to bear in mind that this extraordinary order was suggested and procured by Rosekrans as counsel for his associate, Cheney, and the object to be attained being thereby to drive away all competition at the receiver's sale, by enabling them to turn in that large amount as and for money to satisfy any bid made by Cheney.

It will be seen that at the receiver's sale, as appears by his report, the receiver sold the interest of the company in the lands purchased from Rosekrans and Cheney, and struck the same off to Cheney upon his bid of $100 only, while the road-bed and all of the lands of the Adirondack Estate and Railroad Company were struck off to Cheney at one bid and as an entirety, for the sum of $370,068.32, which, with the $100, covered the amount and interest which such receiver was required to realize. It is thus made to appear that by this unconscionable operation, Rosekrans and Cheney got back their own lands, being over 100,000 acres, of the admitted value of over $350,000, and for which they obtained their judgment, for the paltry sum of $100, while under the judgment they sweep out of existence the title of the company to other real estate of the value of $2,000,000 and upwards. By the order of the 28th day of November, 1862, which instructed receiver Sheldon how to conduct the sale, he was at liberty to unite with Alexander Seward, a hostile receiver from Oneida county; but Sheldon, as appears by his report, joined with Andrew Dexter, the successor of Seward, which it will be seen was not authorized by the terms of the order. The complaint charges that prior to the order of instruction to the receiver, Rosekrans, acting in his own behalf and as counsel for Cheney, entered into a corrupt and collusive agreement with Hezron A. Johnson and others, who claimed to act as agents or otherwise for the

company, by reason of which Rosekrans was permitted to obtain the order in the 4th district, directing the mode of sale of the property mentioned. And that upon the same collusive agreement, such sale was conducted under the advice and counsel of Rosekrans, Cheney, Johnson and others. The learned justice who wrote the opinion at the special term in this action takes exception to this allegation, because such allegation did not go to the extent to allege absolutely that the " persons with whom the corrupt and collusive agreement is alleged to have been made, were athorized or empowered to act on the part of the company or in any manner to compromise it, by anything they might consent these defendants should do." The fallacy of this reasoning will be apparent, because the company could confer no power upon an agent to compromise it or its stockholders; and again, it is enough to know that Rosekrans and Cheney, acting with Johnson and others upon the assumption that they did represent the railroad company, can make no difference in the opinion of the court as to the turpitude of the whole scheme, organized and carried out to the ruin of the company and the interest of its stockholders.

Why should not Rosekrans and Cheney be compelled to transfer to a receiver in this action the $1,400,000 of stock and bonds standing to their credit, as the consideration of the sale by them to the Adirondack Company of the road-bed and the lands of the Adirondack Estate and Railroad Company, especially as it will be seen that they also sold their own lands for the sum of $400,000, of which they received in cash $100,000, and mortgages to secure the balance ? The jurisdiction of this court is ample to enable it to require Rosekrans and Cheney to make full pecuniary atonement for the wrong done to the plaintiff and others, the stockholders of the Adirondack Estate and Railroad Company. (*Story's Eq. Jur.* § 187 *et seq.*)

*John O. Mott*, for the respondents. The complaint shows that Cheney and Rosekrans severally obtained regular judgments against the Adirondack Estate and Railroad Company, after appearance and answer by the defendant; and that upon petition of Cheney, after execution upon this judgment was returned unsatisfied, one Sheldon was appointed receiver of the property of the corporation, under section 36, article 2, title 4, chapter 8, part 3, of the Revised Statutes. It also shows that, upon the petition of one Chadwick, another judgment creditor of the corporation, the execution upon which had been returned unsatisfied, one Dexter was also appointed a receiver of the property of the corporation, under the same statute. These receivers severally qualified, and took upon themselves the discharge of the duties of the office. They were thus, by chapter 403 of the laws of 1860, section 1, (*Laws of* 1860, *p.* 699,) possessed of all the powers, and subject to the obligations and duties provided for receivers appointed on the voluntary dissolution of corporations. These latter receivers (2 *R. S.* 490, *Edm. ed., orig. paging* 469, § 67) are made trustees of the estate of the corporation, for the benefit of its creditors and shareholders; and by section 68, are declared to have the powers conferred by law upon trustees of insolvent debtors, under chapter 5, part 2 of the Revised Statutes. This last statute, (2 *R. S.* 43, *Edm. ed., orig. paging* 41,) section 7, subdivision 4, requires the trustees to sell at public auction, from time to time, all the estate, real and personal, vested in them, after giving fourteen days' notice of the time and place of sale, and publishing the same for two weeks in a newspaper printed in the county where the sale shall be made. The statute does not declare in what county the sale of real estate shall be made, but section 46 makes the trustees subject to the order of the Supreme Court. The statute and the rule of the court, relating to sales of real estate under mortgage foreclosure and on execution, have no application to sales

made by trustees of insolvent debtors, or receivers of insolvent corporations. In foreclosure cases, the court may order the sale made in another county than the one where mortgaged premises are situated, (2 R. S. 200, § 157;) and inasmuch as the statute above cited (§ 46) has made the trustees subject to the order of the Supreme Court, and has thus conferred upon that court jurisdiction to determine in what manner the sale shall be made, its decision is binding in every court, until reversed. See the remarks of Johnson, J., in *People* v. *Sturtevant*, (5 *Seld.* 266, 267.) It cannot be questioned collaterally.

The complaint in this case shows that the sale of the real estate of the corporation, by the receivers, was in exact conformity with the provisions of section 7, subdivision 4, of 2 Revised Statutes, 43, above cited; that it was in exact conformity with the order of the court, and was, therefore, regular.

The court also had power to confirm the sale, and the complaint shows that it was duly confirmed. Within the case above cited, it cannot be questioned collaterally by any one, unless impeached for fraud. It is to be observed that there is no allegation in the complaint that the order of the court giving instructions to Sheldon, receiver, as to the sale, was obtained through any misrepresentations or concealment of facts; and it is therefore to be assumed that the order was made upon a full view of all the circumstances affecting the subject, and that it was wisely ordered, not only for the benefit of the creditors of the corporation, but also for its stockholders. It is also to be observed that the complaint contains no allegations that any act was done by either Rosekrans, Cheney, or the receiver, to prevent competition at the sale, or to interfere with or discourage bidders; and the report of the receiver, set out in the complaint, discloses the fact that the sale was in all respects just and fair, and in conformity with the order of the court and the statute. Nor is it alleged

in the complaint that the board of directors or stockholders of the corporation, including the plaintiff, had not full knowledge of the order of the court and of the time and place of sale, and the nature of the notice of sale and description of the property; nor is it alleged that the property would have brought more, in the opinion and belief of the plaintiff, had the sale been made at any other place or under any other notice or description. The plaintiff's claim for relief is based upon the iteration and reiteration of the words fraud, collusion, conspiracy, and unfair advantage, which have no meaning or force, when viewed in connection with the facts alleged, and are rendered perfectly harmless when the allegations of the complaint to which they are applied are considered. I proceed to consider these allegations of fraud, collusion, and conspiracy, in the order of the time of the events to which they are applied in the complaint. It is alleged, "that prior to the sale by the receiver," (but at what particular time is not stated,) Rosekrans and Cheney entered into some arrangement, whereby said Rosekrans was to participate with said Cheney in the benefits resulting from such bids, and was to become and to be with said Cheney, joint owner and tenant in common of all the lands and interests at law and in equity to be acquired at such sale, and that pursuant to such understanding and agreement the said Rosekrans made and executed the satisfaction piece and receipt for his judgment. This agreement is not alleged to have been fraudulent; and, indeed, in view of the other facts disclosed in the complaint, it cannot be conceived how it could be so. Rosekrans and Cheney, as the complaint discloses, made their several contracts with the corporation for the sale of lands on the same day, October 8th, 1860; they obtained their several judgments against the corporation on the same day, February 19th, 1862; the records of judgment in the two actions were filed and the judgments docketed on the same day, February 22d, 1862;

and it is to be inferred that the judgments were docketed at the same time of day, giving neither the preference or priority of lien, as the court adjudged that the two judgments were the first liens on the real estate of the corporation. It may be asked what course was more natural and appropriate than that two judgment creditors thus situated should make an agreement, such as is alleged they did make. By this agreement, as well as by the fact that Rosekrans was a judgment creditor of the corporation whose property was to be sequestrated by the receiver's sale, he became and was interested in the sale to be made, and he had the right to act as counsel for himself, and to protect his own interests, and was not excluded from such action by any statute or rule of law; and the allegations in the complaint, " that the petition (for the receiver to obtain the instructions of the court as to the sale) was prepared by said Rosekrans in the action in which said Cheney was plaintiff, as was also the original draft of the order thereon founded," is wholly innoxious, and without force. The action and proceedings for sequestration, although in form in Cheney's name, were, in law, the action and proceedings of the defendant Rosekrans also.

But it is alleged " that prior to the sale by the receiver, the said Rosekrans and Cheney conspiring together, and for the purpose of securing to themselves the large property of the corporation, by virtue of their judgments, induced the receiver, Sheldon, to apply to the court, by petition, for instructions as to the sale of the property." With all respect for everybody who had any agency in drafting the complaint, it is submitted that the allegation is simply absurd. It has already been shown that the receiver had, by law, the right, and was required to make the sale, as he did, without the instructions of the court; and in the absence of any allegation that the petitions contained any misstatement or concealment of facts, or of any corruption on the part of the court, it is impossible

to predicate an allegation of fraud or conspiracy of any kind upon the act of applying to the court for instructions to the receiver as to the sale; and the words "conspiring together for the purpose of securing to themselves the large property of the corporation," have no meaning in law or fact, in the connection in which they are used.

The creditors of the corporation had the right. It was lawful for them to agree to get the property as low as they could, (to conspire together for that purpose, if the plaintiff prefers so to express it,) if they did no act to impose upon the court, or any act to interfere with bidders at the sale, or to prevent competition. *Vendor vendit quam maximo potest emptor emit quam mimmo potest;* and in the absence of all acts of fraud, a purchase at the lowest price is not to be impeached or questioned. The allegation "that the receiver, Sheldon, was acting in the interest of the said Cheney and Rosekrans, and under their control and direction," is equally harmless as against them and the receiver, and is also absurd. By the statute already referred to, the receiver was made the trustee for the creditors and stockholders of the corporation. He was bound by law to act in the interest of the creditors to the extent of selling the property, and was authorized to obey their directions to the extent of asking the court for instructions, upon a truthful representation of all the facts affecting the property in his hands, and there is no allegation in the complaint that he did more than this. The complaint shows that the court made the order, the court gave its instructions to its receiver, the instructions were in accordance with the statute, the receiver complied with those instructions to the letter, and the court confirmed the sale. It must be borne in mind that there is no allegation that the board of directors of the corporation had not full knowledge of all the particulars of the proceedings for the sale, and of the sale, and that there is no allegation that the plaintiff did not know of the application

by the receiver for instructions as to the sale, or of the sale, at the time it was made. All he alleges on that subject is, " that he did not know, until November, 1866, that the fraud and collusion had been practised as stated, (which is shown not to have existed,) and that he did not know that the sale was conducted as stated; that is, that he did not know how the receiver offered the property for sale at the auction, first in parcels, and then as a whole. In view of these circumstances, and the additional fact that the defendants Rosekrans and Cheney subsequently sold the property purchased at the receiver's sale to a new corporation, (the Adirondack Company,) a *bona fide* purchase, it is a matter of no force that they purchased the property at a receiver's sale, at a price below its alleged value, or that they made large profits upon the resale. The sale, if irregular, cannot be set aside. (*See Clarke* v. *Davenport*, 1 *Bosw.* 95, 120, 121, *and authorities cited.*) If the sale was void, the plaintiff has no cause of action. There are other allegations in the complaint which it may be proper, although unnecessary, to notice. The allegation that the defendant Rosekrans was a justice of the Supreme Court in the fourth district, and had an unfair advantage in procuring the order for the sale and the order for confirmation, is of no force whatever. His right to the office is certainly unquestioned, and his legal rights as a judgment creditor of the corporation are not thereby destroyed. No issue can be taken upon such an allegation. It is not on allegations of a fact, but of an inference of the plaintiff, sustained by no allegation of fact to support it. If denied, it cannot be proved by evidence of any fact alleged. As an inference, the allegation of unfair advantage is not justified by any fact alleged; and equally idle and senseless is the allegation "that the defendant Rosekrans, acting in his own behalf and as counsel for Cheney, entered into a corrupt and collusive agreement with one Hezron A. Johnson and others, who claimed to

act as agents, or otherwise, for the said Adirondack Estate and Railroad Company, by which he was permitted to obtain the orders of the court for sale in the fourth district." "Johnson and others" were not the agents of the corporation. If they had been, the plaintiff would so have alleged. They were strangers to the corporation and its creditors— mere outsiders. A corrupt and collusive agreement with them, for any purpose, would have been ineffectual and ridiculous. They had no consent to give, and if given it was of no effect. If they were the agents of the corporation, and gave consent to the orders, the corporation is bound by the acts of its agents, and of course the plaintiff has no ground of action. But it is not alleged that either the receiver or the court had knowledge of any such agreement, or that the action of the court was based upon it, nor how the result would have been changed had the agreement not been made and the consent not given. It seems to have been the idea of the one who drew the complaint, that the plaintiff would be sure of having some kind of relief if he interspersed his allegations with the words fraud, collusion, corrupt agreement, and unfair advantage, without regard to the subjects with which they were connected, or alleging how they affected the interests of the plaintiff. If the allegation is correct, "that the order directing the sale, and the sale, was void and in violation of the statute," no title passed, and the plaintiff has no ground of action. (1 *Cowen,* 735, *and cases cited.*)

It should be remarked, also, that there is no allegation of fraud, collusion, conspiracy, or being subject to undue influences by the receiver Dexter, appointed in the fifth district; and the complaint shows that he united in the sale with Sheldon, and in the conveyance of the property to Cheney, and under the statute his sale, without the order of the court, made with full knowledge on the part of the corporation and its stockholders, including the plaintiff, which is not denied, passed a perfect title to the

purchaser. The pleader's ideas in regard to the doctrine of subrogation, are about as confused as his notions in regard to fraud and conspiracy, and corrupt agreements with strangers.

The idea of partial subrogation, and that of total subrogation, to the position of a creditor, without paying his debt, or offering to pay it, is novel. It has generally been supposed that the right existed only upon condition that the one who sought to enforce it, paid the debt of the one whose place he sought to occupy. It will be perceived that the plaintiff asks for himself and his associates that they may be subrogated only to a part of the defendants' position, and that he makes no offer to pay their judgments, which have been ' discharged or the mortgage which they have against the new corporation. The omission of any offer to pay the mortgage is fatal to the plaintiff's action. But the doctrine of subrogation has no application to such a case as this. Again, it does not appear that the corporation—the Adirondack Estate and Railroad Company—has been dissolved. If it has not, and there has been any fraud practised, by which its property has been sacrificed, or the title to it clouded, the remedy is by the corporation, and not by individual stockholders, or the collective body of stockholders; and if the corporation has been dissolved, the right of action, if any exists, is in the receivers, (who are by statute made trustees of the property of the corporation,) who do not appear to have been discharged. The stockholders, also, are not entitled to any of the proceeds of the sequestered estate until all the creditors of the corporation have had their debts satisfied; and there is no allegation that there are no other creditors, or that there would be a surplus to be divided among the stockholders, if the sale were set aside and the property resold.

Again; the remedy of the plaintiff, if he is entitled to relief, is by application in the proceedings for sequestra-

tion, and not by independent action. (30 *N. Y. Rep.* 80. 10 *Paige*, 243.) Upon a motion for a resale of the property, on the ground of inadequacy of consideration, the party moving would be required to offer a larger sum. In this case no such offer is made.

In any view, the demurrer to the complaint should be sustained, and judgment affirmed.

*By the Court*, CLERKE, P. J. I have nothing to add to the opinion of the justice at special term. He overruled the demurrers, and his decision is supported by unanswerable reasoning.

The judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, April 5, 1869. *Clerke, Sutherland* and *Ingraham*, Justices.]